**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RAINFOREST DISTRIBUTION CORP., <br><br> Plaintiff, <br><br><div align="center">v.</div><br> VYBES L.A. LLC, <br><br> Defendant, <br><hr> VYBES L.A. LLC, <br><br> Counterclaimant/Third-Party Plaintiff <br><br><div align="center">v.</div><br> RAINFOREST DISTRIBUTION CORP. and ALEXANDER RIDINGS, an individual, <br><br> Counterclaim Defendant/Third-Party Defendant. | Case No. 2:20-cv-00634 (BRM) (JSA) <br><br><div align="center">**OPINION**</div> |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are two Motions: (1) Plaintiff[1] Rainforest Distribution Corp.'s

("Rainforest") Motion (A) to Dismiss Defendant Vybes L.A. LLC's ("Vybes") counterclaims

pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), (B) to dismiss and/or strike the

---

[1] With its Answer, Defendant Vybes filed a conflated "Counterclaim and Third-Party Complaint," asserting counterclaims against Plaintiff Rainforest and naming Alexander Ridings ("Ridings") as the third-party defendant. Consequently, the parties refer to Defendant Vybes as "Counterclaimant/Third-Party Plaintiff" rather than Defendant. To be clear, Rainforest remains the plaintiff against which Vybes has asserted counterclaims, and Ridings is a Third-Party Defendant. The Court will refer to the parties by name rather than relationship to the claims.

Third-Party Complaint pursuant to Federal Rules of Civil Procedure 14(a)(4), 12(b)(6), and 9(b), or (C) alternatively, to strike Vybes's demands for relief pursuant to Federal Rules of Civil Procedure 12(f) and 14(a)(4) (ECF No. 16); and (2) Ridings' Motion to Dismiss and/or strike Vybes's Third-Party Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), 9(b), and 14(a)(4), or alternatively, to strike Vybes's demands for relief pursuant to Federal Rules of Civil Procedure 12(f) and 14(a)(4) (ECF No. 18).[2] Vybes opposed both motions (ECF No. 27) and Rainforest replied (ECF No. 28). On July 14, 2020, the Court held oral argument in this matter. (ECF No. 31.) Following oral argument, the Court administratively terminated the motions without prejudice and directed the parties to engage in good faith settlement discussions. (*See id.*) On November 24, 2020, Magistrate Judge Dickinson held a settlement conference (ECF No. 44), but the parties were unable to reach a settlement (ECF No. 57). On December 16, 2020, the Court held a status conference in which the parties were directed to file supplemental briefs. (ECF No. 46.) On January 8, 2021, both parties submitted supplemental briefs (ECF Nos. 47, 48), and on January 11, 2021, the motions were reinstated (ECF Nos. 51, 52). Having reviewed the parties' submissions filed in connection with the Motions, for the reasons set forth below, and for good cause shown, Rainforest's and Ridings' Motions to Dismiss are **GRANTED**.

## I.   BACKGROUND

For the purposes of the Motions to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also considers any

---

[2] Ridings did not file a brief supporting his Motion to Dismiss, but "expressly adopts and incorporates by reference" the arguments raised by Rainforest in its brief. (*See* ECF No. 18.) Therefore, the Court will only refer to Rainforest's brief in opposition (ECF No. 16-1) and its reply (ECF No. 28) for the purposes of this Opinion.

2

"document *integral to or explicitly relied upon* in the complaint."[3] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

On or about November 5, 2019, Vybes and Rainforest entered into a supplier agreement (the "Supplier Agreement") in which "Vybes agreed to grant Rainforest the exclusive right to distribute its products within a specified geographical territory that included New Jersey, New York City, parts of Connecticut, and certain specific retail supermarkets." (ECF No. 13 ¶¶ 8–9.) The purpose of Supplier Agreement, as indicated in the Agreement's recitals, was to "support[] the growth of [Vybes's] brand and products while reasonably protecting the financial, operational, and reputational resources expended by Rainforest." (Supplier Agreement, Ex. A. (ECF No. 1) at 1.) Section 3(A) of the Supplier Agreement provides, in relevant part "[e]xcept for Excluded Accounts, [Vybes] appoints Rainforest as its exclusive distributor for the Products in the Territory and Rainforest agrees to use commercially reasonable efforts to resell the Products in the Territory." (ECF No. 1, Ex. A ¶ 3A). Rainforest was also required, at all times, to "use its diligent and good faith efforts to market, promote and expand the sale of Products in the Territory." (*Id.* ¶ 4A). Under the Supplier Agreement, Rainforest could terminate "at any time, with or without cause, by providing [Vybes] with sixty (60) days advance written notice." (*Id.* ¶ 9A). Vybes could terminate "at any time, with or without cause, by providing Rainforest with sixty (60) days advance written notice (a "Termination Notice") and paying a termination fee (the "Termination Fee")," which was "due and owing within sixty (60) days of Rainforest's receipt of a Termination Notice." (*Id.* ¶ 9B). The Termination Fee was "to be calculated on the basis of Rainforest's net purchase of Vybes's products during the time period leading up to the termination notice." (ECF No. 13 ¶ 13.)

---

[3] The Supplier Agreement and Termination Agreement are both "integral" and "explicitly relied upon in the complaint," so the Court will consider them on the Motions to Dismiss.

During a meeting on or around June 4, 2019, Vybes provided Rainforest with notice of its intention to terminate the Supplier Agreement. (*Id.* ¶ 14.) Between June 4, 2019, and August 7, 2019, Vybes and Rainforest worked to transition the supply arrangement from Rainforest to Vybes's new supplier. (*Id.* ¶ 15.) And on August 7, 2019, the parties entered into a "Termination and Release Agreement" under which Vybes agreed to pay a Termination Fee based on the formula set forth in the Supplier Agreement. (*Id.*) Vybes alleges when it entered into the Termination and Release Agreement, it "was unaware that Rainforest had breached the Supplier Agreement by fraudulently manipulating its net purchases during the weeks leading up to the termination of the Supplier Agreement . . . with the knowing and purposeful intent of manipulating the Termination Fee to its advantage." (*Id.* ¶ 16.) And before even entering into the Termination and Release Agreement, Vybes alleges it learned "Rainforest had become aware of Vybes's intention to terminate the Supplier Agreement" and "began to manipulate its purchases of Vybes's products in an effort to maximize the Termination Fee." (*Id.* ¶ 18.) Between April 2019 and June 2019, Vybes asserts Rainforest ordered over $600,000 of its products, "more than double the amount of product [than] it sold," which induced Vybes "into entering an artificially inflated Termination and Release Agreement containing a Termination Fee which far exceeded the amount to which Rainforest would have been entitled." (*Id.* ¶¶ 20–21.) In connection with these inflated orders, Vybes alleges Alexander Ridings ("Ridings"), Rainforest's CEO, made a series of misrepresentations "in an attempt to coerce Vybes to deliver more product to Rainforest," and "failed to disclose that Rainforest was overordering." (*Id.* ¶¶ 22–25.) According to Vybes, Ridings' various representations were false because Ridings "had no regard for Vybes's interests or reputation," knew "that he was ordering more product than consumers would purchase, and that he intended to

4

dump Vybes's product into the market," which would then expire and require "Vybes to repurchase the product" and incur substantial damages. (*Id.* ¶ 26.)

Under the Termination and Release Agreement, Vybes was "fraudulently induced to forgive $92,596.50 in unpaid receivables owed by Rainforest" and had to pay "Rainforest an additional $285,403.50 as a Termination Fee." (*Id.* ¶ 29.) Vybes made the initial payment of $47,567.25 due under the Termination and Release Agreement. (*Id.*) But following the execution of the Termination and Release Agreement, Rainforest dumped the over-ordered product from Vybes into the market, which then expired on retailers' shelves and required Vybes to "pick up and replace product at many locations in the New York City market." (*Id.* ¶¶ 30–31.) Lastly, "Rainforest's inflated ordering during the April 2019 through June 2019 time period also caused Vybes to overproduce its production runs in July and August 2019 because those production runs were derived from its distributor's ordering patterns," which resulted in "excess perishable inventory, freight charges, and warehousing expenses." (*Id.* ¶ 34.)

Rainforest filed a complaint with this Court on January 17, 2020, alleging Vybes breached the Termination Agreement between the parties (Count I); and requesting this Court enter declaratory judgment on its breach of contract claim (Count II). (*See* ECF No. 1 ¶¶ 92–102.) On March 12, 2020, Vybes answered Rainforest's Complaint, asserted counterclaims against Rainforest, and filed a Third-Party Complaint alleging Ridings. (*See* ECF No. 13.) Vybes's counterclaims alleged Rainforest breached the Supplier Agreement between the parties (Count I); Rainforest breached the Implied Covenant of Good Faith and Fair Dealing (Count II); Rainforest and Ridings fraudulently induced Vybes into entering the Termination and Release Agreement and artificially inflated the Termination Fee (Count III). (ECF No. 13 ¶¶ 36–58.) On April 2, 2020, Rainforest filed a Motion to Dismiss Vybes's counterclaims (ECF No. 16), and on April 20, 2020,

Ridings also filed a Motion to Dismiss Vybes's counterclaims, incorporating and adopting the arguments set forth in Rainforest's brief in support of its motion (ECF No. 18). On June 1, 2020, Vybes opposed Rainforest's and Ridings' motions (ECF No. 27), and on June 22, 2020, Rainforest replied (ECF No. 28). On July 14, 2020, the Court held oral argument. (ECF No. 31.) On December 16, 2020, this Court ordered the parties to submitted supplemental briefing regarding the motions. (ECF No. 46.) On January 8, 2021, both parties submitted supplemental briefs. (ECF Nos. 47, 48.)

## II.   LEGAL STANDARD

"In evaluating the sufficiency of counterclaims, the Court employs the familiar Rule 12(b)(6) standard." *In re Invs. Warranty of Am., Inc. v. B.W.E. Dev., L.L.C.*, Civ. A. No. 09-4490, 2010 WL 2557559, at *2 (D.N.J. June 23, 2010). In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the

pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

## III.   DECISION

In its Motion to Dismiss, Rainforest makes four main arguments: (1) Vybes's breach of contract claims fail as a matter of law; (2) Vybes's counterclaim for breach of the covenant of good faith and fair dealing is duplicative of its breach of contract claim; (3) Vybes's fraudulent

inducement claim fails as a matter of law; and (4) Vybes cannot pursue any claim against Ridings personally. (*See generally* ECF No. 16-1.) Alternatively, if the Court finds any of Vybes's claims survive dismissal, Rainforest requests the Court strike "various types of relief improperly sought by Vybes pursuant to Rule 12(f)." (*Id.* at 24.) The Court will address each argument in turn.

### A.   Vybes's Breach of Contract Counterclaim (Count I)

As an initial matter, the Court must decide whether Vybes's breach of contract claim should be governed by New York or New Jersey law. The parties agree the breach of contract claim is governed by New York law. (*Compare* ECF No. 16-1 at 10 ("New York law applies with respect to Rainforest's alleged breach of the Supplier Agreement") *with* ECF No. 26 at 8 (reciting elements of breach of contract claim under New York law).) Additionally, the Supplier Agreement's choice of law provision states New York law applies. (ECF No. 1, Ex. A ¶ 17 ("The Parties agree that this agreement shall be governed by, construed, and enforced in accordance with the laws of the State of New York excluding conflicts and choice of law provisions applicable under New York law.").) Because the parties have contractually agreed New York law governs, the court will uphold that decision pursuant to New Jersey's choice of law rules. *See Collins On behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 183–84 (3d Cir. 2017) ("New Jersey choice-of-law rules provide that '[o]rdinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice.'" (quoting *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992))).

"To prevail on a breach of contract claim under New York Law, a plaintiff must prove (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000) (internal quotation marks omitted).

8

Rainforest argues the Supplier Agreement was expressly terminated and superseded by the Termination Agreement, which means Vybes cannot sue for breach under the Supplier Agreement. (ECF No. 16-1 at 11.) Vybes argues the Termination Agreement expressly released claims by Rainforest and preserved claims by Vybes under the Supplier Agreement by not expressly releasing those claims in the Termination Agreement. (ECF No. 26 at 11.) Paragraph 1 of the Termination Agreement provides:

> Notwithstanding anything to the contrary in the Supply Agreement, the parties agree that the Supply Agreement terminated effective as of the Effective Date, <u>including</u> the provisions of the Supply Agreement that expressly survive such termination, as such terms shall be superseded by the terms of the New Supply Agreement. However, any underlying claims of [Rainforest] that may exist under Supply Agreement prior to the Effective Date shall be released pursuant to Section 4 below. [Rainforest] acknowledges and agrees that as of the Effective Date, (i) all rights and privileges of [Rainforest] under the Supply Agreement ceased and [Rainforest] shall discontinue forever the sale of Products (as defined in the Supply Agreement) and the use of the Trademarks (as defined in the Supply Agreement) in the territory covered by such Supply Agreement (the "<u>Former Territory</u>") and (ii) [Rainforest] shall immediately and forever discontinue the use of any signs, advertising materials or other written matter of any kind whatsoever relating to the Products and/or any Trademarks used in connection with the Products or Vybes within the Former Territory. For the avoidance of doubt, nothing herein requires [Rainforest] to cease any distribution, sales or marketing activities related to the Products or Vybes in the New Territory.

(Termination Agreement, Ex. C. (ECF No. 1) ¶ 1.) And Paragraph 4 of the Termination Agreement states:

> In consideration of the terms hereof, including, without limitation, the Termination Payment [Rainforest] hereby unconditionally releases Vybes and its past and present officers, directors, principals, managers, members, affiliates, representatives and agents (collectively, the "<u>Released Parties</u>"), and their respective successors and assigns, of any and all claims of any kind whatsoever that [Rainforest] has or may have from the beginning of time up to the Effective Date, including, without limitation, those arising from

or in connection with the termination of the Supply Agreement. [Rainforest] covenants and agrees that it shall not attempt to assert, directly or indirectly, any action against Vybes, or any of the other Released Parties, or any of their respective successors or assigns. In the event that [Rainforest] breaches any of the promises set forth in this Section 4, [Rainforest] shall pay, by way of indemnification, all costs and expenses of the Released Parties incurred as a result of such breach, including, without limitation, such Released Parties' reasonable attorneys' fees.

[Rainforest] understands and agrees that the claims released in this Agreement include any and all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected, which [Rainforest] has or may have against Vybes and/or any of the Released Parties under the Supply Agreement and termination thereof, and [Rainforest] hereby waives any and all rights it may have to assert such claims at a later date.

(*Id.* ¶ 4.)

Lastly, Paragraph 10 of the Termination Agreement declares "[t]his Agreement represents the entire agreement between the parties with respect to the subject matter specified herein and supersedes all prior agreements and understandings, whether written or oral, with respect to the subject matter hereof." (*Id.* ¶ 10.)

Based on Paragraphs 1 and 4, Vybes argues the Termination Agreement released claims only by Rainforest and did not release any claims under the Supplier Agreement by Vybes. (ECF No. 27 at 10.) Both parties cite to *Napster, LLC v. Rounder Recs. Corp.*, 761 F. Supp. 2d 200 (S.D.N.Y. 2011) as support for their arguments. That case concerned breach of contract claims brought by Napster against Rounder Records Corps. *Id.* at 202. Napster entered into contracts with Rounder in 2001 and 2006. *Id.* The 2006 contract expressed the parties' intent to terminate the 2001 contract. *Id.* at 203. Napster claimed Rounder breached the 2001 contract by refusing to indemnify Napster for costs related to certain infringement actions it had litigated and settled. *Id.*

10

at 206. Rounder argued Napster's breach of contract claims failed as a matter of law because "the 2006 Agreement expressly terminated and superseded the 2001 Agreement." *Id.*

The *Napster* court noted "[u]nder clearly established New York law, '[o]nce an agreement has been rescinded, there can be no claims based on the cancelled agreement unless the right to make such claims is expressly or impliedly reserved within the terms of the rescission.'" *Id.* (quoting *Milan Music, Inc. v. Emmel Commc'ns Booking, Inc.*, 37 A.D.3d 206, 206 (N.Y. App. Div. 2007)). Napster argued its claims for breach still applied because the 2006 Agreement "did not specifically exclude the prior obligations." *Id.* In rejecting this argument, the *Napster* court clarified "[u]nless the claim of breach is specifically preserved, it is gone and must be judged solely by the new contract." *Id.* The *Napster* court further stated "[t]he presumption, in other words, is that claims based on a rescinded contract do not survive the rescission." *Id.* In sum, the *Napster* court held "[s]ince the 2006 Agreement evinces—without ambiguity—Napster and Rounder's intent to rescind the 2001 Agreement, and does not indicate an intention to reserve claims based on the 2001 Agreement, Napster is precluded—as a matter of law—from maintaining a claim for breach of the 2001 Agreement." *Id.* (citing *Carvel Corp. v. Eisenberg*, 692 F. Supp. 182, 184 (S.D.N.Y. 1988)).

In *Napster*, Napster only asserted "that it did not intend to extinguish claims based on the 2001 Agreement," even though the language of the 2006 Agreement clearly stated the 2001 Agreement was terminated and superseded. *Id.* at 207. Here, Vybes argues its claims survive the Termination Agreement because only Rainforest's claims were specifically released, which means Vybes claims were, at the very least, impliedly reserved. However, the *Napster* court requires claims be specifically preserved to survive, and Vybes has not cited any case, nor has the Court found any case, that supports the proposition that express release of one party's claims impliedly

11

reserves the other party's claims, especially when the agreement under which those claims are brought is specifically superseded by a later agreement. And following the *Napster* court's declaration that claims alleging breach of a rescinded contract are presumptively barred by the subsequently entered contract unless the claims of breach are "specifically reserved" in the rescinded contract, Vybes claims of breach of the Supplier Agreement do not survive the Termination Agreement. *Id.*; *Penguin Grp. (USA) Inc. v. Steinbeck*, 537 F.3d 193, 200 (2d Cir. 2008) ("Once terminated and superseded, the new contract provides all of the parties' obligations and remedies for breach." (citing *Northville Indus. Corp. v. Fort Neck Oil Terminals Corp.*, 100 A.D.2d 865, 867 (2d Dep't 1984))); (ECF No. 1, Ex. C, ¶ 1 ("[T]he parties agree that the Supply Agreement terminated effective as of the Effective Date, <u>including</u> the provisions of the Supply Agreement that expressly survive such termination, as such terms shall be superseded by the terms of the New Supply Agreement.")); (ECF No. 1, Ex. C, ¶ 10 (stating that the Termination Agreement "represents the entire agreement between the parties with respect to the subject matter specified herein and supersedes all prior agreements and understandings")).

Even if Vybes's claims under the Supplier Agreement were reserved by the Termination Agreement, Vybes has not adequately pled a claim for breach of contract under the Supplier Agreement. "Under New York law, the elements of a breach of contract claim are (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004)). The element at issue here is breach, as the parties dispute whether Rainforest's alleged over-ordering gives rise to a claim under the Supplier Agreement. At the motion to dismiss stage, "the Court may dismiss a breach of contract claim for failure to state a

claim if the 'plain language' of the contract contradicts or fails to support the plaintiff's allegations of breach." *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 639 (S.D.N.Y. 2020) (quoting *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156–58 (2d Cir. 2016)).

Under the Supplier Agreement, Rainforest agreed to support the growth of Vybes's brands and products, use "commercially reasonably efforts to resell" Vybes's products within the geographic territory specified by the Supplier Agreement, and use "diligent and good faith[4] efforts to market, promote, and expand" the sale of Vybes's products. (*See* ECF No. 1, Ex. A at 1, ¶¶ 3A, 4.) Vybes alleges "Rainforest breached its obligations and promises set forth under the Supplier Agreement by . . . knowingly and purposefully manipulating its purchases of Vybes's products in order to artificially inflate the Termination Fee at the expense of Vybes's interests." (ECF No. 13 ¶ 38.) Additionally, Vybes asserts Rainforest materially breached the Supplier Agreement "by failing to order product with the purpose of supporting Vybes," which "caused additional damages to Vybes relating to overproduction, expiring product and other damage to Vybes's goodwill and reputation." (*Id.* ¶¶ 39–40.) That is, Vybes's main allegation for breach under the Supplier Agreement is that Rainforest over-ordered product that it did not sell, which resulted in an increased Termination Fee, expired products, and other damages. (*See id.*; *see also id.* ¶ 20 ("Altogether, Rainforest ordered over $600,000 of Vybes's products between April 2019 and June 2019, more than double the amount of product that it sold.").) The Supplier Agreement does not obligate Rainforest, as the distributor, to guarantee certain sales of Vybes's products. Instead, in

---

[4] The Court notes that good faith determinations include issues of fact not appropriate for determination at the motion to dismiss stage. *See Rockland County Sheriff's Deputies Ass'n v. Grant*, 670 F. Supp. 566, 568 (S.D.N.Y. 1987) (claims that "typically turn on issues of fact concerning good faith or intent . . . [are] usually unsuited for summary judgment"). However, the parties did not raise these issues and any claims under the Supplier Agreement are clearly barred by the superseding Termination Agreement.

entering the Supplier Agreement, Vybes agreed "that Rainforest does not guarantee the purchase or performance level of any retailer." (ECF No. 1, Ex. A ¶ 4G.) That is, the parties specifically contracted that Rainforest would not be responsible for lost sales Vybes incurred. (*See id.*) Additionally, Vybes's claim that it incurred damages as a result of expired products is also covered by the Supplier Agreement, which states Vybes "shall replace, at its own expense, all Products which are spoiled, damaged or otherwise do not meet the requirements of the Agreement" and Vybes "releases Rainforest from any liability resulting from any type of damage or spoilage to any Products not purchased by Rainforest." (ECF No. 1, Ex. A ¶¶ 5C, 4H.) Therefore, even if Vybes's breach of contract claims were not barred by the superseding Termination Agreement, Vybes cannot state a claim because the Supplier Agreement "contradicts . . . [Vybes's] allegations of breach." *Perks*, 444 F. Supp. 3d at 639. Accordingly, Count I of Vybes's Counterclaim against Rainforest is **DISMISSED.**

### B.    Vybes's Counterclaim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)

Rainforest argues Vybes's claim alleging breach of the implied covenant of good faith and fair dealing should be dismissed because it is duplicative of its breach of contract counterclaim. (ECF No. 16-1 at 15.) Vybes asserts the two claims are not duplicative of each other. (ECF No. 26 at 14.)

"Under New York law, all contracts contain an implied covenant of good faith and fair dealing in the course of performance." *Gillespie v. St. Regis Residence Club*, 343 F. Supp. 3d 332, 341 (S.D.N.Y. 2018) (citations omitted). "[T]o state a claim for breach of the implied covenant of good faith and fair dealing, 'the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff.'" *Tonra v. Kadmon Holdings, Inc.*, 405 F. Supp. 3d 576, 585–86 (S.D.N.Y. 2019) (quoting *Aventine Inv.*

*Mgmt., Inc. v. Canadian Imperial Bank of Commerce*, 265 A.D.2d 513, 697 (N.Y. App. Div. 1999)). "Generally, under New York law, a cause of action alleging breach of the implied covenant is duplicative of a cause of action alleging breach of contract." *Rojas v. Don King Prods., Inc.*, Civ A. No. 11-8468, 2012 WL 760336, at *3 (S.D.N.Y. Mar. 6, 2012) (citations omitted). A claim for breach of the implied covenant of good faith may "survive a motion to dismiss only 'if it is based on allegations different than those underlying the accompanying breach of contract claim' and if the relief sought is not 'intrinsically tied to the damages allegedly resulting from the breach of contract.'" *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 496 (S.D.N.Y. 2011) (quoting *ARI & Co., Inc. v. Regent Intern. Corp.*, 273 F. Supp. 2d 518, 521–22 (S.D.N.Y.2003)).

Vybes's breach of contract claim alleges Rainforest breached its obligations to support Vybes's growth, use commercially reasonable efforts to resell Vybes's products, and use good faith efforts to promote and expand Vybes's product sales by "knowingly and purposefully manipulating its purchases of Vybes's products in order to artificially inflate the Termination Fee at the expense of Vybes's interests." (ECF No. 13 ¶¶ 38–39.) Similarly, Vybes's claim for breach of the implied covenant of good faith and fair dealing alleges "Rainforest breached its obligation to engage in good faith and fair dealing by knowingly and purposefully manipulating its purchases of Vybes's products in order to artificially inflate the Termination Fee at the expense of Vybes's interests." (*Id.* ¶ 45.) That is, the alleged breach in both claims is that Rainforest manipulated its purchases of Vybes's products to inflate the Termination Fee. Because Vybes's claim for breach of the implied covenant of good faith is based on the same allegations as those underlying its breach of contract claim, dismissal is proper on that basis alone. *See Ruiz v. Liberty Mut. Fire Ins. Co.*, Civ. A. No. 19-4399, 2019 WL 7293377, at *2 (S.D.N.Y. Dec. 30, 2019) ("Under New York law, 'courts do not recognize a distinct claim for breach of the implied covenant of good faith and

fair dealing when it is premised upon the same facts as a breach of contract claim.'" (quoting *Clement v. Farmington Cas. Co.*, Civ. A. No. 13-1026, 2015 WL 6971565, at *6 (S.D.N.Y. Nov. 10, 2015))).

Furthermore, Vybes's breach of contract claim alleges Rainforest's breaches "caused additional damages to Vybes relating to overproduction, expiring product and other damage to Vybes's goodwill and reputation." (*Id.* ¶ 40.) Similarly, Vybes alleges "Rainforest's breach of the implied covenant of good faith and fair dealing caused additional damages to Vybes relating to overproduction, expiring product and other damage to Vybes's goodwill and reputation." (*Id.* ¶ 46.) In relation to both of these claims, Vybes alleges it "is entitled to recover damages from Rainforest." (*Id.* ¶¶ 41, 48.) Therefore, dismissal is also proper because Vybes's breach of the implied covenant of good faith claim seeks to recover the same damages it seeks to recover under its breach of contract claim. *See ARI & Co.*, 273 F. Supp. 2d at 523 ("Under New York law, claims for breach of the implied covenant of good faith which seek to recover damages that are intrinsically tied to the damages allegedly resulting from the breach of contract must be dismissed as redundant."). Accordingly, Count II of Vybes's Counterclaim against Rainforest is **DISMISSED**.

### C.    Vybes's Counterclaim for Fraudulent Inducement against Rainforest and Ridings

The Court must first determine the law applicable on Vybes's fraudulent inducement counterclaim, as the parties dispute which state's law applies. Rainforest argues Vybes's claims are governed by New York law pursuant to the Supplier Agreement's choice of law provision. (ECF No. 16-1 at 16–17.) Vybes argues the Court "must apply the choice of law rules for New Jersey as New Jersey is the forum in which the case was brought." (ECF No. 26 at 17.)

"Under New York law, a choice-of-law provision indicating that the *contract* will be governed by a certain body of law does not dispositively determine that law which will govern a claim of *fraud* arising incident to the contract." *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (citing *Plymack v. Copley Pharm., Inc.*, Civ. A. No. 93-2655, 1995 WL 606272, at \*5 (S.D.N.Y. 1995)). Additionally, "in order for a choice-of-law provision to apply to claims for tort arising incident to the contract, the express language of the provision must be 'sufficiently broad' as to encompass the entire relationship between the contracting parties." *Id.* (quoting *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 309–10 (2d Cir. 1994)). Here, the Supplier Agreement provides that it "shall be governed by, construed, and enforced in accordance with the laws of the State of New York." (ECF No. 1, Ex. A ¶ 17.) In *Krock*, the Second Circuit found a choice-of-law provision that stated the agreement before it "shall be governed and construed in accordance with the laws of the Commonwealth of Massachusetts," a nearly identical provision to the choice-of-law provision in the Supplier Agreement, could not "be read broadly enough to apply to fraudulent misrepresentation." 97 F.3d at 645. Therefore, Vybes's fraudulent inducement claim is not governed by the Supplier Agreement's choice-of-law provision.

When a claim is not specifically governed by a choice-of-law provision, a federal court sitting in diversity, as this Court does here[5], "determines the substantive law to be applied by looking to the choice of law rules of the forum state." *Freedom Waste Sols., Inc. v. Fam. Dollar*, Civ. A. No. 15-4756, 2015 WL 5996183, at \*2 (D.N.J. Oct. 14, 2015) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). Under New Jersey choice of law rules, a court

---

[5] Rainforest's Complaint alleges this Court has diversity jurisdiction. (*See* ECF No. 1 ¶ 5 ("This Court has subject-matter jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332(a) because Rainforest and Vybes are citizens of different states and the amount in controversy exceeds $75,000.").) Vybes's Counterclaim and Third-Party Complaint allege the same. (ECF No. 13 ¶ 3.)

"must first establish whether there is an actual conflict." *Lebegern v. Forman*, 471 F.3d 424, 429 (3d Cir. 2006). "Under New Jersey law, a fraudulent inducement claim comprises five elements: (1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment." *CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, Civ. A. No. 15-3103, 2016 WL 1718100, at *3 (D.N.J. Apr. 29, 2016) (citing *Metex Mfg. Corp. v. Manson*, Civ. A. No. 05-2948, 2008 WL 877870, at *4 (D.N.J. Mar. 28, 2008)). And under New York law "a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Banque Arabe et Internationale D'Investissement v. Md. Nat. Bank*, 57 F.3d 146, 153 (2d Cir. 1995)). The Court concludes there is no conflict between New York and New Jersey's approach to fraud claims. *Tarzy v. Dwyer*, Civ. A. No. 18-1456, 2019 WL 132280, at *9 (S.D.N.Y. Jan. 8, 2019) (holding "there is no material difference between New Jersey and New York law governing fraud claims"); *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 250 (S.D.N.Y. 2001) (finding no material difference between New York and New Jersey law with respect to fraudulent inducement claim); *Kaplan v. GreenPoint Glob.*, Civ. A. No. 11-4854, 2012 WL 2992572, at *6 (D.N.J. July 20, 2012) (finding "[n]o conflict exists between New Jersey and New York's laws governing common law fraud" and applying New Jersey law). Notably, Rainforest does not argue New Jersey and New York's approach to fraudulent inducement claims are materially different. (ECF No. 16-1 ("As New York and New Jersey law are materially aligned with respect to fraud, the Court may practically apply the law of either state."). Therefore, because there is no conflict, the court will apply New Jersey law to Vybes's claim for fraudulent inducement. *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008)

18

(noting if there is no distinction between the laws of two states, "there is no choice-of-law issue to be resolved" (citing *Rowe v. Hoffman–La Roche, Inc.*, 917 A.2d 767, 771 (N.J. 2007))).

As discussed, to state a claim for fraudulent inducement "a plaintiff must allege (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *see also J.H. Reid Gen. Contractor v. Conmaco/Rector, L.P.*, Civ. A. No. 08-6034, 2010 WL 398486, at *6 (D.N.J. Jan. 27, 2010). "Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico*, 507 F.3d at 200 (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004)). Rule 9(b), which provides "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, as the Supreme Court has stated,

> 'generally' is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8. And Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label "general allegation," and expect his complaint to survive a motion to dismiss.

*Iqbal*, 556 U.S. at 686–87 (internal citations omitted).

The Third Circuit has taught, in applying Rule 9(b), "focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'" *Christidis v. First Pennsylvania Mortg. Tr.*,

717 F.2d 96, 100 (3d Cir. 1983) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1298, at 407 (1969)). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200 (citing *Lum*, 361 F.2d at 224).

As an initial matter, Rainforest argues Vybes's fraudulent inducement claim is barred by the economic loss doctrine. (ECF No. 16-1 at 17–18.) Vybes asserts Ridings induced it into entering the Termination Agreement and Rainforest over-ordered product which "mispresented demand in the marketplace and had nothing to do with the contractual obligations of the parties under the Termination Agreement." (ECF No. 27 at 19.) "The economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." *Chen v. HD Dimension, Corp.*, Civ. A. No. 10-863, 2010 WL 4721514, at *8 (D.N.J. Nov. 15, 2010) (citing *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F.Supp.2d 557, 562 (D.N.J. 2002)); *Atlas Acquisitions, LLC v. Porania, LLC*, Civ. A. No. 18-17524, 2019 WL 6130774, at *3 (D.N.J. Nov. 19, 2019) ("Under New Jersey law, a plaintiff typically may not recover in tort for damages caused by a breach of contract . . . ."). "Fraud claims can proceed alongside breach of contract claims where there exists fraud in the inducement of a contract or an analogous situation based on pre-contractual misrepresentations." *RNC Sys., Inc. v. Mod. Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012) (quoting *Barton v. RCI, LLC*, Civ. A. No. 10–3657, 2011 WL 3022238, *7 (D.N.J. July 22, 2011)). "Generally, fraud claims that are extrinsic to the underlying contract, and consequently not barred under the economic loss doctrine, are claims for fraudulent inducement." *Touristic Enters. Co. v. Trane Inc.*, Civ. A. No. 09-02732, 2009 WL 3818087, at *2 (D.N.J. Nov. 13, 2009) (citations omitted). "[T]he 'critical issue' with regard to economic loss 'is whether the allegedly tortious conduct is extraneous to the contract.'" *Bracco*

*Diagnostics, Inc.*, 226 F. Supp. 2d at 564 (quoting *Emerson Radio Corp. v. Orion Sales, Inc.*, Civ. A. No. 95-6455, 2000 WL 49361, at *7 (D.N.J. Jan. 10, 2000), *aff'd*, 253 F.3d 159 (3d Cir. 2001)). That is, "[i]f a plaintiff asserts that a defendant breached a duty owed to the plaintiff that is independent of the duties that arose under the contract, the economic loss doctrine does not apply." *Atlas Acquisitions, LLC v. Porania, LLC*, Civ. A. No. 18-17524, 2019 WL 6130774, at *3 (D.N.J. Nov. 19, 2019) (citing *Montclair State Univ. v. Oracle USA, Inc.*, Civ. A. No. 11-2867, 2012 WL 3647427, at *5–6 (D.N.J. Aug. 23, 2012)).

Here, Vybes does not plead Rainforest breached duties independent of those arising under its breach of contract claim, so its fraudulent inducement claim is barred by the economic loss doctrine. Vybes alleges "Rainforest and Ridings fraudulently induced Vybes into entering the Termination and Release Agreement by knowingly and purposefully manipulating its purchases of Vybes's products in order to artificially inflate the Termination Fee at the expense of Vybes's interests." (ECF No. 13 ¶ 50.) Vybes further alleges "Rainforest and Ridings had intentionally manipulated Rainforest's purchases with the intent to defraud Vybes. Rainforest and Ridings did this because they had advanced knowledge that Vybes would be terminating the Supplier Agreement and wanted to disproportionately capitalize on the Termination Fee provision in the Supplier Agreement." (*Id.* ¶ 54.) At its core, the alleged conduct underlying Vybes's claim for fraudulent inducement is that Rainforest and Ridings over-ordered Vybes's product to inflate the Termination Fee Vybes owed Rainforest. This same alleged conduct forms the basis of Vybes's breach of contract claim. (*Id.* ¶ 38 ("Rainforest breached its obligations and promises set forth under the Supplier Agreement by . . . knowingly and purposefully manipulating its purchases of Vybes's products in order to artificially inflate the Termination Fee at the expense of Vybes's interests.").) Vybes alleges this conduct breached the Supplier Agreement, because "[p]ursuant to

the Supplier Agreement, Rainforest agreed to support the growth of Vybes's brands and products, use commercially reasonable efforts to resell Vybes's products, and to at all times use its diligent and good faith efforts to market, promote and expand the sales of Vybes's products." (*Id.* ¶ 37.) That is, the alleged misrepresentations made by Rainforest and Ridings relate to its duties under the Supplier Agreement, because Vybes alleges Rainforest fraudulently induced Vybes into entering the Termination Agreement by breaching the Supplier Agreement. (*See* ECF No. 1, Ex. A at 1 "[T]he spirit of this Agreement supports the growth of [Vybes's] brands and products while reasonably protecting the financial, operational and reputational resources expended by Rainforest during this process.") Therefore, Vybes's claim for fraudulent inducement is barred by the economic loss doctrine. *See Cioni v. Globe Specialty Metals, Inc.*, 618 F. App'x 42, 47 (3d Cir. 2015) ("Because Cioni's argument is, in essence, that Appelbaum promised Globe would grant options when Globe would not—the very same promise that Globe contracted to perform—Cioni's claims are barred by the economic loss doctrine." (citing *Spring Motors Distribs., Inc. v. Ford Motor Co.*, 489 A.2d 660, 672–73 (N.J. 1985))); *Atlas Acquisitions, LLC*, 2019 WL 6130774, at *3 (barring claim for fraudulent inducement based on the economic loss doctrine because the allegations that formed the basis of fraudulent inducement were not extraneous to the contract at issue); *Chen*, 2010 WL 4721514, at *9 ("Clearly, Plaintiff alleges that Defendants breached the Agreement, and did so in a fraudulent fashion. Nonetheless, a claim of common law fraud that is intrinsic to the underlying agreement, as is the case here, is barred by the economic loss doctrine.").[6]

---

[6] Vybes additionally argues the economic loss doctrine does not bar its claims because the doctrine only applies "where the remedy sought is economic in nature." (ECF No. 27 at 19.) Because Vybes demands judgment under its fraudulent inducement claim for compensatory damages, consequential damages, punitive damages, and declaratory relief, Vybes submits it does not seek claims for economic loss. (*See id.*) The economic loss doctrine "bars a plaintiff from recovering

Even if Vybes's claim was not barred by the economic loss doctrine, its fraudulent inducement claim would still fail for lack of specificity. The parties only dispute whether Vybes adequately pled two elements: knowledge of falsity and reasonable reliance. (ECF No. 16-1 at 20–22; ECF No. 27 at 23–24.) However, failure to adequately plead any one of the elements of a fraudulent inducement claim provides a basis for dismissal.

Regarding the knowledge of falsity element, Vybes alleges "Rainforest and Ridings knew that their actions and representations were false and misleading at the time they were made" and Rainforest and Ridings manipulated Rainforest's purchases of Vybes's products because "they had advanced knowledge that Vybes would be terminating the Supplier Agreement and wanted to disproportionately capitalize on the Termination Fee in the Supplier Agreement." (ECF No. 13 ¶¶ 51, 54.) That is, because "Rainforest had become aware of Vybes's intention to terminate the Supplier Agreement sometime during the months leading up to the June 4, 2019 termination notice," Rainforest was able to "manipulate its purchases of Vybes's products in an effort to

---

purely economic losses suffered as a result of a defendant's negligent or otherwise tortious behavior, absent proof that the defendant's conduct caused actual physical harm to a plaintiff or his property." *Pub. Serv. Enter. Grp., Inc. v. Phila. Elec. Co.*, 722 F. Supp. 184, 193 (D.N.J. 1989); *Schenker, Inc. v. Expeditors Int'l of Washington, Inc.*, Civ. A. No. 3555-14T1, 2016 WL 3563187, at *1 (N.J. Super. Ct. App. Div. July 1, 2016) ("The doctrine 'bars tort remedies in strict liability or negligence when the only claim is for' economic loss, as opposed to physical injury or property damage." (citations omitted)). This bar applies to Vybes's claims. First, Vybes's claims for compensatory and consequential damages qualify as economic loss. *Spring Motors Distribs., Inc. v. Ford Motor Co.*, 489 A.2d 660, 665 (N.J. 1985) ("Economic loss can take the form of either direct or consequential damages."). Second, Vybes's other claims for damages can be similarly characterized as economic loss because they do not involve physical injury or property damage. *Phila. Elec. Co.*, 722 F. Supp. at 193 n.4 ("In essence, economic losses are all pecuniary damages not resulting from physical harm or property damage . . . ."); *Sibeto v. Capella Univ.*, Civ. A. No. 13-1674, 2014 WL 3547347, at *8 (W.D. Pa. June 13, 2014), *report and recommendation adopted as modified*, Civ. A. No. 13-1674, 2014 WL 3547344 (W.D. Pa. July 17, 2014) (applying Third Circuit law and finding plaintiff's fraud claims barred by the economic loss doctrine because her demands for compensatory damages, punitive damages, and attorney's fees "resulted only in economic loss" as the claims "did not arise out of physical injury or property damage").

maximize the Termination Fee." (*Id.* ¶ 18.) Vybes supports this contention by asserting Rainforest began over-ordering Vybes's products in April 2019, before the June 4, 2019 termination notice. (*Id.* ¶ 19.) But Vybes does not specifically allege how or when Rainforest or Ridings knew that Vybes intended to terminate the Supplier Agreement before Vybes gave Rainforest notice of its intent to terminate on June 4, 2019. *See Frederico*, 507 F.3d at 200. Federal Rule of Civil Procedure 9(b) provides "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, "[a]lthough Rule 9(b) excuses parties from pleading 'conditions of a person's mind' under the heightened pleading standard required for fraud claims, '[i]t does not give [them] license to evade the less rigid—though still operative—strictures of Rule 8.'" *Mitsui Foods, Inc. v. Synergie Canada, Inc.*, Civ. A. No. 19-14478, 2020 WL 468337, at *2 (D.N.J. Jan. 28, 2020) (quoting *Iqbal*, 556 U.S. at 686–87). The facts underlying Vybes's fraudulent inducement claim establish that Rainforest ordered "more products than it could sell" starting in April 2019 before Vybes provided Rainforest with notice to terminate the Supplier Agreement on June 4, 2019, but they do not specifically allege how or when Rainforest knew of Vybes's intent to terminate before that notice so that it could "manipulate its purchases of Vybes's products" to increase the Termination Fee. (ECF No. 13 ¶¶ 18, 19.) Such allegations are insufficient when the claim for fraud, like Vybes's fraudulent inducement claim here, is based on misrepresentations. *In re Great Atl. & Pac. Tea Co., Inc. Sec. Litig.*, 103 F. App'x 465, 469 (3d Cir. 2004) ("When the alleged fraud is based on misrepresentation or false statements, however, it is not enough to merely allege that defendants knew or must have known that their statements were false." (citing *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004))). Because Vybes has not alleged the "who, what, when, where and how" of the events giving rise to Rainforest's and Riding's alleged fraudulent inducement, Vybes has not properly stated a claim.

24

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1422. Accordingly, Count III of Vybes's Counterclaim against Rainforest and Ridings is **DISMISSED**.[7]

Vybes also filed a Third-Party Complaint against Ridings, seeking to find him personally liable for Rainforest's alleged fraudulent conduct. Vybes alleges, upon information and belief, that "Rainforest is a mere legal instrumentality of Ridings" and "Ridings controls all of the operations of Rainforest and dominates the entity." (ECF No. 13 ¶ 3.) Vybes also argues Ridings is personally liable for his participation in Rainforest's fraudulent inducement of Vybes. (ECF No. 27 at 25; ECF No. 13 ¶¶ 49–58.) Rainforest argues this veil-piercing claim fails because Vybes has not alleged any of the requisite factors to survive dismissal. (ECF No. 16-1 at 23–34.) Vybes argues Rainforest misconstrues its theory of liability against Ridings because Vybes seeks personal

---

[7] In relation to its breach of contract claim, Vybes argues the Termination Agreement should be deemed invalid due to Rainforest's and Riding's fraudulent conduct. (ECF No. 26 at 12.) Vybes argues *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Turtur*, 892 F.2d 199 (2d Cir. 1989) and *Petra Mezzanine Fund, L.P. v. Willis*, Civ. A. No. 12-00601, 2012 WL 5382944 (D. Del. Nov. 1, 2012) dictate a finding in its favor. Neither case is helpful to Vybes here. *Turtur* addressed whether one contract induced by fraud could render another contract executed as part of the same exchange unenforceable. 892 F.2d at 203. Because the *Turtur* court found issues of fact existed as to whether the parties intended the two contracts at issue were interdependent, the court denied summary judgment. *See id.* at 204. Here, Vybes does not argue that the Supplier Agreement and Termination Agreement were interdependent such that a fact finder would be required to determine the parties intent—Vybes only argues the Termination Agreement should be deemed invalid due to Rainforest's and Ridings' allegedly fraudulent conduct. Because Vybes has not raised this argument, the court need not consider it. *Glidepath Holding v. Spherion Corp.*, 590 F. Supp. 2d 435, 459 n. 9 (S.D.N.Y. 2007) ("[T]he Court has no obligation to consider an argument for which a party has cited no legal authority."). Additionally, the court in *Petra* found a claim for fraudulent inducement could proceed under a subsequent agreement between the parties only after finding the allegations underlying that claim met the heightened pleading standards of Rule 9(b). 2012 WL 5382944, at *2. Here, because the Court has found Vybes has not met Rule 9(b)'s heightened pleading standard for its fraudulent inducement claim, the Termination Agreement cannot be nullified on that basis.

liability based on the "tort participation theory" and not a veil-piercing claim. (ECF No. 27 at 25–27.)

Under New Jersey law, a plaintiff must demonstrate two elements to pierce the corporate veil: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *The Mall at IV Grp. Properties, LLC v. Roberts*, Civ. A No. 02-4692, 2005 WL 3338369, at *3 (D.N.J. Dec. 8, 2005) (citations and quotations omitted). Vybes has not come close to alleging either of these elements (*see generally* ECF No. 13), so the Court will not construe Vybes's theory of personal liability against Ridings as arising from a veil-piercing claim, as Rainforest suggests. Instead, the Court will determine whether Ridings can be held personally liable under the tort participation theory.

"[T]he essence of the participation theory is that a corporate officer can be held personally liable for a tort committed by the corporation when he or she is sufficiently involved in the commission of the tort." *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 272 (N.J. 2002). A "majority" of New Jersey cases applying the tort participation theory "have involved intentional torts" like "fraud and conversion." *Id.* However, a plaintiff seeking personal liability of an officer must still sufficiently allege the underlying intentional conduct. *See G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 588 (D.N.J. 2014) (holding officer personally liable for statutory and common law fraud claims after finding both claims were properly alleged); *Bell Container Corp. v. Palagonia Bakery Co. Inc.*, Civ. A. No. 19-6545, 2019 WL 8105297, at *5 (D.N.J. Dec. 26, 2019) (allowing fraudulent inducement claim to proceed after finding it was not barred by the economic loss doctrine and sufficiently alleged personal liability based on the tort

participation theory). The Court has already found Vybes's fraudulent inducement claim, alleged against Rainforest and Ridings, barred by the economic loss doctrine and fails to state a claim under Rule 9(b)'s heighted pleading requirements. Accordingly, as alleged, Vybes's theory of personal liability fails as a matter of law.

## IV.    CONCLUSION

For the reasons set forth above, Rainforest's and Ridings' Motions to Dismiss are **GRANTED**, and Vybes's Counterclaims and Third-Party Complaint are **DISMISSED[8] without prejudice**.

Date: August 31, 2021                                        */s/ Brian R. Martinotti*
                                                    **HON. BRIAN R. MARTINOTTI**
                                                    **UNITED STATES DISTRICT JUDGE**

---

[8] Throughout its Counterclaim and Third-Party Complaint, Vybes seeks various forms of relief. These forms of relief include: (1) consequential damages; (2) rescission of the termination agreement; (3) attorney's fees; and (4) punitive damages. (*See* ECF No. 13 ¶¶ 36–58.) Rainforest alternatively moves to strike each of these requested remedies if the Court were to find any of Vybes's claims survive dismissal. (ECF No. 16.) Because the Court has found each of Vybes's claims should be dismissed, it will not address Rainforest's motion to strike. However, each of Vybes's claims are dismissed without prejudice, and Vybes is afforded an opportunity to amend its pleadings. If Vybes cures the deficiencies set forth in this Opinion, the Court will revisit whether Vybes is entitled to the relief it requests.